JOHN E. PALMER AND HILDA I. PALMER, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5173–63.   Filed April 22, 1965.

*John A. Mitchell*, for the petitioners.
*John C. Galluzzo, Jr.*, for the respondent.

OPINION

MULRONEY, *Judge:* Respondent determined a deficiency in petitioners' 1960 income tax in the amount of $6,214.33. The issue is whether the gain realized upon the sale of a parcel of realty is taxable to petitioners or their wholly owned corporation.

All of the facts have been stipulated and they are found accordingly.

John E. Palmer and Hilda I. Palmer, with residence at Cumberland Center, Maine, filed a joint income tax return for the taxable year 1960 with the district director of internal revenue, Augusta, Maine.

J. E. Palmer Co. is a Maine corporation which is wholly owned by petitioners. Of the 579 shares of no-par stock outstanding, John E. Palmer owns 576 shares and Hilda I. Palmer owns the remaining 3 shares. J. E. Palmer Co. filed its Federal income tax returns on the basis of a fiscal year ending January 31.

For the fiscal years ended January 31, 1958, January 31, 1959, and January 31, 1960, J. E. Palmer Co. reported on its Federal income tax returns net losses as follows:

| Fiscal year ended Jan. 31— | Net loss reported |
| --- | --- |
| 1958 | $12,503.78 |
| 1959 | 11,122.68 |
| 1960 | 31,135.92 |

During the year 1960 Hilda I. Palmer, petitioner herein, was the sole owner of a parcel of real estate located in Raymond, Maine. This parcel had a basis to her of $5,000 and a fair market value of $35,000 during the taxable year 1960.

In December 1959 J. E. Palmer Co. was indebted to the Canal National Bank of Portland, Maine, in the amount of $177,000, and the bank became concerned about the security which it held and demanded that John E. Palmer furnish additional security.

The petitioners agreed to mortgage the parcel of real estate located in Raymond, Maine, as additional security. By a mortgage deed dated January 5, 1960, and recorded with Cumberland County Registry of Deeds on January 15, 1960, the parcel of real estate located in Raymond, Maine, was made subject to a mortgage in favor of the Canal National Bank up to the principal sum of $35,000. The petitioners did not sign a promissory note nor was any money advanced to them at the time the mortgage deed was given to the Canal National Bank of Portland, Maine.

In the spring of 1960, because J. E. Palmer Co. was showing signs of continuing to operate at a loss, the Canal National Bank suggested to the petitioner, John E. Palmer, that consideration should be given to obtaining substantial additional capital for the J. E. Palmer Co., or selling the corporation, or obtaining financing elsewhere. On June 8, 1960, after several conferences with the Canal National Bank, the petitioners advised the Canal National Bank that Hilda I. Palmer, petitioner herein, would sell the real estate located in Raymond, Maine, the net proceeds to be used to reduce the indebtedness of J. E. Palmer Co. to the Canal National Bank.

During the months of June and July 1960, petitioners negotiated the sale of the parcel of real estate located in Raymond, Maine, with Edward H. Shively. On August 6, 1960, petitioners entered into a written contract for sale of the parcel of real estate located in Raymond, Maine, wherein it was provided that petitioners agreed to sell and Edward H. Shively and Elizabeth M. Shively agreed to purchase the said real estate for a total purchase price of $35,000. On that same date the sum of $1,000 was given to petitioners as part earnest money and in part payment on account of the purchase price. Edward H. Shively and Elizabeth M. Shively agreed to pay the balance of the purchase price and execute all papers necessary for completion of the purchase on or before October 10, 1960.

On August 8, 1960, Hilda I. Palmer executed a warranty deed transferring the parcel of real estate located in Raymond, Maine, to J. E. Palmer Co. This transfer of the real estate located in Raymond, Maine, was reflected on the books of J. E. Palmer Co. as follows:

|  | Debit | Credit |
|---|---|---|
| Real estate | $5,000 |  |
| Local A/P |  | $5,000 |

To record purchase of real estate at Raymond, Maine, from Mrs. J. E. Palmer.

On September 19, 1960, the warranty deed transferring the property located in Raymond, Maine, from Hilda I. Palmer to J. E. Palmer Co. was recorded with the Cumberland County Registry of Deeds.

On October 10, 1960, Edward H. Shively and Elizabeth M. Shively tendered $34,000 as payment in full for the property located in Raymond, Maine, in conformity with the agreement dated August 6, 1960.

On October 10, 1960, J. E. Palmer Co. executed a warranty deed conveying the parcel of real estate located in Raymond, Maine, to Edward H. Shively and Elizabeth M. Shively.

On October 11, 1960, a warranty deed dated October 10, 1960, conveying the parcel of real estate from J. E. Palmer Co. to Edward H. Shively and Elizabeth M. Shively, was recorded with the Cumberland County Registry of Deeds.

The cost incurred in selling the property located in Raymond, Maine, amounted to $2,306, computed as follows:

| | |
|---|---:|
| Broker's commission | $2, 260. 00 |
| Recording of deed | 7. 50 |
| Transfer stamps | 38. 50 |
| Total | 2, 306. 00 |

J. E. Palmer Co. reported the conveyance of the real estate located in Raymond, Maine, on its corporate income tax return for the fiscal year ended January 31, 1961, as follows:

| | | |
|---|---:|---:|
| Gross sales price | | $35, 000 |
| Cost of property | $5, 000 | |
| Expense of sale | 2, 306 | 7, 306 |
| Short-term capital gain | | 27, 694 |

Of the $35,000 received from the sale of the parcel of real estate located in Raymond, Maine, petitioners retained $5,000 for their own use and $27,500 was turned over to the Canal National Bank of Portland, Maine, to reduce the indebtedness of J. E. Palmer Co.

Respondent determined, as set forth in his notice of deficiency, that petitioners "realized a long term capital gain in the amount of $35,000 resulting from the sale of the mortgaged property in Raymond, Maine." His computation of deficiency is based on a sale price of the realty at $40,000 but he now concedes the sale price was $35,000 and he also stipulates the total costs incurred in the sale was the sum of $2,306.

It is respondent's position that J. E. Palmer Co. was a mere conduit through which title passed in effecting the sale of the Raymond real estate by petitioner Hilda I. Palmer to the Shivelys. He argues the transaction must be regarded as Hilda's sale to the Shivelys and he relies upon *Commissioner* v. *Court Holding Co.*, 324 U.S. 331.

Petitioners admit on brief "that the transfer to J. E. Palmer Co. was made for the purpose of saving taxes by utilizing the company loss carry over" but they argue that does not mean the transaction

was a sham; that there was a bona fide sale of the Raymond property to the corporation; and the transfer of the Raymond property to the corporation served a business purpose.

We agree with respondent. The subsequent transfer of the Raymond property to the corporation after petitioners' execution of the contract to sell to the Shivelys would be ineffective to avoid the taxing of the profit on the sale to the petitioner. *Commissioner* v. *Court Holding Co., supra; James Duggan,* 18 B.T.A. 608, and *Nance Realty Co.,* 28 B.T.A. 467. This case is parallel to *Court Holding Co., supra,* but it is stronger for respondent than that case. There the corporation had entered into sale negotiations but no binding contract for the sale of its realty before the liquidation transfer of the realty to its stockholders. When the latter subsequently conveyed to the purchaser who had originally negotiated for the purchase from the corporation, the Supreme Court held the evidence warranted a finding that it was a sale by the corporation and not the stockholders. In the instant case the presence of the written contract to sell and also the payment of $1,000 to petitioners as part payment of the purchase price before title was passed to the corporation, practically demands that this be regarded as a sale by petitioners and their corporation be regarded as acting on their behalf in taking title and disposing of it in accordance with their contract of sale.

The argument that some business purpose was served by the transfer of title to the corporation is without force. That transfer was necessarily subject to the outstanding contract of sale which both petitioners had executed just 2 days before. There was nothing for the corporation to do but pass along the title in conformity with petitioners' contract.

Petitioners minimize Hilda's connection with the corporation and argue on brief that "Hilda I. Palmer is a stranger to the corporation and individually received no gain." The corporation income tax return shows she was president of the corporation working full time for a yearly salary of $2,290. It is true that she owned but a small stock interest (3 shares out of 579 issued) but this was a family corporation where she and her husband owned all the stock and it can hardly be said she was a stranger to the corporation.

In our opinion the intermediate transfer of the title to the Raymond property after the contract of sale, so it could pass title on to the purchasers named in the contract, was merely one step taken by petitioners in their transfer of title to the named purchasers. Such a step is not entitled to separate tax treatment. The transaction must be viewed as a whole. The substance of the transaction, or the sum of all steps to reach an intended result, was petitioners' sale of the Raymond property to the Shivelys for $35,000. That is what is to be taxed.

Petitioners had signed a written agreement to furnish the Shivelys with title to the Raymond property. The fact that title, on its way from petitioners to the Shivelys, passed through their family-owned corporation does not alter the tax consequences arising from a sale by petitioners to the Shivelys.

Respondent's determination that the long-term gain realized on the sale of the Raymond property to the Shivelys is taxable to petitioners is sustained. However, the gain is to be based upon a sale price of $35,000 with deduction for the stipulated costs of sale.

*Decision will be entered under Rule 50.*