**Ned BORD and Anne R. Bord, Petitioners,**

v.

**DISTRICT OF COLUMBIA, Respondent.**

**No. 18476.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 29, 1965.

Decided March 4, 1965.

---

Mr. Werner Strupp, Washington, D. C., with whom Mr. Nathan Sinrod, Washington, D. C., was on the brief, for petitioners.

Mr. Robert E. McCally, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Henry E. Wixon, Asst. Corporation Counsel, were on the brief, for respondent.

Before FAHY, BASTIAN and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

This is a petition for review of a decision of the District of Columbia Tax Court upholding an assessment of deficiency in petitioners' District of Columbia income taxes for the year 1958. The questions raised on appeal are (1) whether amounts received by a stockholder as proceeds from the sale of corporate property are taxable as dividends under 47 D.C.CODE § 1551c(m) (1961); (2) whether petitioners were entitled in their 1958 return to a deduction for bad debts; and (3) whether petitioners should be assessed a negligence penalty for their failure to report taxable income.[1]

I.

Petitioner Anne R. Bord was a stockholder in Sedgwick Gardens, Inc., a corporation which held title to an apartment building known as "Sedgwick Gardens." For some time prior to January, 1958, negotiations for the sale of the apartment building had been carried on between Legum & Gerber, real estate agents, and petitioner Ned Bord, who was office manager of Sedgwick but held no stock in the corporation.[2] On January 27, 1958,

---

1. Petitioners also contend that the statute of limitations, 47 D.C.CODE § 1586i (1961), bars the deficiency assessment. On this point, we affirm on the opinion of the Tax Court. Opinion No. 1020, D.C.

Tax Court, filed November 15, 1963, Docket No. 1858.

2. Petitioner Ned Bord testified on direct examination as follows:

the stockholders of Sedgwick, including petitioner Anne R. Bord, contracted to sell the apartment building to Darwin Corporation. The Sedgwick corporation itself was not a party to the contract.

On February 28, 1958, the Sedgwick stockholders delivered a deed transferring the apartment building from Sedgwick to 3726 Connecticut Ave., Inc., the designee of Darwin Corporation. This deed named only Sedgwick Gardens, Inc. as grantor; the stockholders signed neither the deed nor any other instrument of transfer. The proceeds from the sale were distributed in equal shares to petitioner Anne R. Bord and the other Sedgwick stockholders in accordance with directions contained in a letter from Sedgwick signed "Sedgwick Gardens, Inc. By Ned Bord Vice-President." Shortly thereafter, on March 4, 1958, Sedgwick was dissolved pursuant to a resolution of its board of directors which had been adopted on January 10, 1958.

In their joint 1958 income tax return, petitioners did not report as taxable income the amount received by Anne R. Bord from the sale of the apartment. Respondent deemed the amount to be includible as a dividend under 47 D.C.CODE § 1551c(m) [3] and assessed a deficiency. Its position was upheld by the Tax Court.

In support of the decision of the Tax Court, respondent relies on Berliner v. District of Columbia, 103 U.S.App.D.C. 351, 258 F.2d 651, cert. denied, 357 U.S. 937, 79 S.Ct. 1384, 2 L.Ed.2d 1551 (1958). We there held that when gain which has been realized by the corporation from the sale of appreciated assets is distributed to the stockholders, it is taxable to the stockholder as a dividend under 47 D.C.CODE § 1551c(m). Petitioners counter with District of Columbia v. Oppenheimer, 112 U.S.App.D.C. 239, 301 F.2d 563 (1962), where it was held that appreciation in value which has not been realized by the corporation is not taxable as a dividend when the corporation distributes the appreciated asset to its stockholders. But neither *Berliner* nor *Oppenheimer* disposes of this case completely. The controversy here is concerned, not with how gain admittedly

"Q. You mentioned negotiations. Will you explain what happened.
"A. Legum and Gerber came to Mr. Block and me and suggested possible sale of Sedgwick Gardens.
"THE COURT: When?
"THE WITNESS: It has been over a period of maybe a year or two previous to the final sale.
"THE COURT: When was it?
"THE WITNESS: This began possibly in 1957 and—1957 or 1956, when they talked about possible sale. But we couldn't get together on the price.
"THE COURT: Was that before the resolution dissolving the corporation?
"THE WITNESS: Yes, sir.
"BY MR. STRUPP:
"Q. Negotiations had been going on a number of years prior to that?
"A. Yes, sir. Finally they came to the point where they made an offer that we thought was a justifiable sale. Of course, we considered depreciation, one thing and another. We agreed to a price, negotiated with the other owners, and got their acceptance, and finally signed a contract for the sale.

"THE COURT: By 'we' whom do you mean?
"THE WITNESS: Mr. Block and myself. Mrs. Bord, as a matter of fact, owned the stock. Being agent, I had been managing for Sedgwick Gardens for a number of years. I got in touch with the Goldberg estate, and one other owner, who lives in New York, and having agreed among ourselves that this deserved consideration, we spoke then to Mr. Goldstein and got his tentative approval, and then, of course, we got the New York owner's approval."

3. 47 D.C.CODE § 1551c(m) in pertinent part provides:
   "The word 'dividend' means any distribution made by a corporation * * * to its stockholders or members, out of its earnings, profits, or surplus (other than paid-in surplus), whenever earned by the corporation and whether made in cash or any other property * * * and whether distributed prior to, during, upon, or after liquidation or dissolution of the corporation: * * *".

realized by the stockholders or admittedly realized by the corporation should be treated, but with who realized the gain— the corporation or the stockholders.

In contexts very similar, decisions under the Internal Revenue Code have made it clear that "the task of applying the statutory criteria as to the multitude of particular situations that inevitably arise is to be left to * * * the Tax Court." United States v. McNair Realty Company, 9 Cir., 298 F.2d 35 (1961). Questions as to whether the corporation or its stockholders realize the gain from a sale transacted with a view toward liquidation of the corporation are to be resolved by the Tax Court and upset on appeal only when the Tax Court's determination is clearly erroneous. Compare United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), with Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945). We see no reason why the same principle should not apply to tax litigation under the District of Columbia Code.

The Tax Court's determination that the gain on the sale was realized by the corporation is supported by substantial evidence in the record. Such evidence can be found in the facts that negotiations for the sale had been carried on by an officer of the corporation who was not a stockholder, the corporation was not only the nominal grantor but also the legal owner until after the transfer,[4] and the proceeds from the sale were distributed as the corporation by its letter directed.[5] Furthermore, the commission due Legum & Gerber for its brokerage services was paid out of a corporate account as a corporate expense. Under these circumstances, we are not able to say that the determination of the Tax Court is clearly erroneous.[6]

## II.

Petitioners claimed a bad debt deduction of $86,708.99 resulting from advances made by petitioner Ned Bord to the Sun Radio Corporation, a corporation in which he was a stockholder, director and officer. According to petitioners, it became apparent in 1958 that the corporation would be unable to repay the advances and, therefore, they were entitled to a deduction under 47 D.C.Code § 1557 b(a) (5) (1961).[7] The Tax Court, however, held the evidence insufficient to show that Sun Radio ever became obligated to repay the advances.[8] Since the taxpayer has the burden of establishing

4. The rent continued to be attributed to corporate income and the expenses were charged, as corporate expenses until the actual transfer.

5. Petitioners contend that the letter was sent only at the request and for the protection of the title company acting as disbursing agent at the settlement. But the Tax Court could consider the letter as indicating corporate control over the proceeds and, hence, corporate realization of the gain.

6. Under our holding in District of Columbia v. Oppenheimer, *supra*, appreciation not realized by the corporation cannot be taxed as a dividend when the appreciated asset is transferred to the stockholders. Therefore, had the Tax Court concluded that the corporation did not realize the gain, a very different situation would have arisen concerning the tax treatment of the proceeds of the sale. Since that situation is not present

here, we intimate no opinion as to what tax liabilities, if any, might arise.

7. 47 D.C.Code § 1557b(a) in pertinent part provides:

"The following deductions shall be allowed from gross income in computing net income:
* * * * *
"(5) *Bad Debts.*—Debts ascertained to be worthless and charged off within the taxable year * * *."

8. Early in 1959, Sun Radio Corporation went into bankruptcy. Petitioner Ned Bord filed a claim in the bankruptcy proceedings for $99,520.95. At the same time, the Trustee in Bankruptcy asserted a claim against Bord for misfeasance and nonfeasance in his corporate office. These opposing claims were ultimately disposed of, with court approval, in a settlement agreement in which Bord agreed to pay a sum of $5,000, to cause the National Bank of Washington to

the facts to substantiate his claimed deduction,[9] the finding of the Tax Court on this point is affirmed.

## III.

 Respondent assessed petitioners a negligence penalty under 47 D.C.Code § 1589b(a) (1961) which in pertinent part provides:

> "If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency * * * shall be assessed, collected, and paid in the same manner as if it were a deficiency."

The Tax Court held that petitioners' failure to report the proceeds of the sale of the apartment building was sufficient basis for imposing the penalty. But the tax question raised by the transaction was a substantial one under the District of Columbia Code, and we have not been cited to, nor have we found, any prior decision which completely resolves it. Under these circumstances, the petitioners should not be penalized for originally taking a position different from that ultimately adopted by the Tax Court.

 Respondent argues in this court that the penalty assessment should be upheld on the ground that petitioners failed to report the proceeds of the sale as "nontaxable income" in the space provided on the return. The Tax Court, however, did not rely on this ground, and we cannot uphold its action on grounds which were not relied on. See Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

The decision of the Tax Court is affirmed on all points except for the assessment of the negligence penalty. On that point the case is remanded to the Tax Court for final determination in accordance with our opinion.

So ordered.

---

withdraw its claim of $33,000, and to withdraw his own claim of $99,520.95. In return, the Trustee agreed to release his claim against Bord. The Tax Court held, correctly in our opinion, that, in view of the other consideration given by Bord and the unliquidated nature of the Trustee's claim, no inference as to the merit of Bord's claim for repayment of the prior advances could be drawn from the settlement agreement.

9. 5 MERTENS, FEDERAL INCOME TAXATION § 30.79 (1964).